## The McCormick Harvesting Machine Company v. Thomas M. Coe.

1. SALES—*When the Title Passes.*—Appellant's general agent received from one of its special agents the following order: "Please ship McCormick Binder Twine as follows: 200 60 lb. bales, 200 50 lb. bales, sisal, 8 cents; 10 60 lb. bales, 10 50 lb. bales manila at 11½ cents, to Mr. ——— Strawn, Ill., on or about May 1, by Ry., for which we agree to pay f. o. b. cars in ——— as follows: Sisal eight (8) cents per lb., manila, eleven and one-half (11½) cents per lb, net cash on or before October 1, 1892;" under which it shipped the twine to B. & K. The latter becoming insolvent, the twine was levied upon by the creditors and replevied by appellant. *It was held*, that the title to the twine passed, and that it was subject to execution in the hands of B. & K.

2. JUDGMENTS OF CONFESSION—*Collateral Attack.*—To enable a third person to raise the question of authority in one partner to sign the firm name to a judgment note, it is necessary for him to show that his rights have been invaded in some way by a fraudulent judgment entered upon the note.

**Memorandum.**—Replevin. Appeal from the Circuit Court of Livingston County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the December term, 1893, and affirmed. Opinion filed May 22, 1894.

The opinion states the case.

APPELLANT'S BRIEF, D. B. SHERWOOD AND R. R. WALLACE, ATTORNEYS.

One partner has no right to sign the firm name to a warrant of attorney to confess judgment against the firm.

Sloo v. State Bank, 1 Scam. 428; Soper v. Fry, 37 Mich. 236.

The clerk has no jurisdiction to enter judgment in vaca-tion without proof of the warrant of attorney. This is a jurisdictional requirement. The want of it vitiates the judgment, and the same can be attacked collaterally. Gard-ner v. Bunn, 132 Ill. 406.

G. W. PATTON and A. H. MILLS, attorneys for appellee.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

Appellant brought this suit in replevin for a lot of binding twine, against appellee, who claimed the right to hold it as sheriff, by virtue of levies under executions against the firm of Benway & Knutz. The rights of the parties depended upon the question whether Benway & Knutz had possession of the twine, as agents of appellant, or were owners of it. There was a trial which resulted in a verdict and judgment for appellee.

There was no serious conflict in the evidence, and the material facts, as proved, were as follows: Benway & Knutz did business in 1891 and 1892, at Strawn, Illinois, and on October 3, 1891, they entered into a contract with plaint-iff, by which they were appointed agents for plaintiff, for the sale of harvesting machines, wire, twine, binder trucks, bundle carriers and repairs, during the season of 1892, at such prices and on such terms as should be prescribed by plaintiff or its general agent, and in accordance with numer-ous provisions and conditions contained in the contract. A commission was fixed for the sale of machines, and the con-tract contained blank spaces for the price of twine per pound, delivered on board cars in Chicago, and for the com-mission to be allowed on sales of twine by the agents, but neither of these blank spaces was filled. Provision was also made for the purchase by Benway & Knutz of all the twine that might be obtained of plaintiff during the season of 1892, if they should so desire, and so state to the general agent at

the time of ordering, and should in that case pay for such twine in cash on or before the first day of October, 1892. So far as twine was concerned, the matter was left in abeyance until Benway & Knutz should order twine for the season of 1892, when it was understood a net price per pound would be given, and the contract gave them an option to purchase or sell on commission.

Early in 1892, a clerk of Benway & Knutz wrote, by direction of the firm, to S. W. Chapman, the general agent of plaintiff, concerning twine.

No answer was received, but the general agent sent one E. M. Southard to the firm to make the necessary arrangements. Southard negotiated with the firm, and while doing so was in communication by telegraph with the general agent. The parties finally agreed upon the terms of a sale of twine to the firm, and Southard made out an order for the same, on a printed form of plaintiff designed for such sales, with blanks to be filled up, which order, omitting immaterial parts, is given in plaintiff's abstract, as follows:

" Order for McCormick Binding Twine.

STRAWN, ILL., 1, 16, 1892.

MR. S. W. CHAPMAN, ELGIN, ILL.

Please ship McCormick Binder Twine as follows: 200 60 lb. bales, 200 50 lb. bales, sisal, 8 cents, 10 60 lb. bales, 10 50 lb. bales manila 1, at $11\frac{1}{2}$ cents, to Mr. —— Strawn, Ill., on or about May 1, by Ry., for which we agree to pay f. o. b. cars in ——— as follows: Sisal, eight (8) cents per lb., manila, 1, eleven and one-half ($11\frac{1}{2}$) cents per lb., net cash, on or before October 1st, 1892.

Signed per E. M. SOUTHARD."

In order to get the firm to take the manila twine, Southard made the following indorsement on the back of the order: "It is further agreed that if there is five thousand pounds left unsold at the end of the season that they are to settle for it by note due Oct. 1, '93."

This order embodied the agreement made by Southard as agent of plaintiff with the firm. Southard had been directed to take all orders in triplicate, and to send two cop-

ies to Chapman. There was no dispute that the order for the twine was taken by him, and the only thing denied was that he forwarded an order of this kind to his superior. The order produced on the trial was left with the firm.

No other order was produced or proved, and the twine was sent to the firm in pursuance of the agreement made and represented by this one. Southard was sent to Strawn to act for the plaintiff in the matter, and clothed with apparent authority to make the agreement. There can be no question that plaintiff was bound. It is urged that the contract was not admissible in evidence without proof that plaintiff accepted it, but it was not made subject to such a condition, and the evidence was that plaintiff did accept it by shipping the twine. The commission contract provided that its provisions should not be changed without the written approval of plaintiff or its general agent, but the contract made did not constitute such a change. There was nothing in the commission contract prohibiting a purchase of twine, and the contract made was in substantial harmony with one of its provisions.

It is clear from the evidence that the twine was sold to .Benway & Knutz, and was subject to levy under execution against them. No other conclusion could have been properly reached by the jury.

It is objected that the court would not allow plaintiff to prove what would have been done with twine in the hands of Benway & Knutz under a former similar contract for the season of 1891, if there had been any twine left over, and what the custom of plaintiff was as to carrying over twine from one season to another. The court permitted proof of everything that was done under the contract for 1891, and it was not proper to show what plaintiff would have done if something had occurred which did not occur.

The questions asked merely called for plaintiff's construction of the contract and were incompetent.

Defendant introduced in evidence four judgments against Benway & Knutz, on which the execution levied on the twine was issued. It is claimed that plaintiff's objection to two

of these judgments should have been sustained because the affidavits of execution of the warrants of attorney to confess judgment did not sufficiently show the authority of Joseph J. Benway, one of the firm, to sign the firm name. The affidavits showed that Benway signed the firm name, and one stated that Knutz consented thereto, and the other stated the authority of Benway on information and belief. There was no evidence tending to prove that the judgments were fraudulent or collusive.

In order to entitle the plaintiff to raise the question of authority in Benway to sign the firm name it was necessary for the plaintiff to show that its right had been invaded in some way by a fraudulent judgment. There being no evidence tending to prove that fact, the plaintiff could not question Benway's authority. That could not be done by any one but Knutz. Martin v. Judd, 60 Ill. 78; Farwell v. Cook, 42 Ill. App. 291.

It is urged that the court erred in refusing plaintiff's first instruction which was as follows:

" The court instructs the jury that it is the duty of the court to interpret and construe the contracts between the McCormick Harvesting Machine Co. and Benway & Knutz for the years 1891 and 1892 as shown by exhibits A and B, and not for the jury." It is not complained that the court declined to interpret and construe the written contracts referred to or to state their legal effect to the jury by instruction, and the refusal to state to the jury the mere abstract rule of law as to the duty of the court was not error.

But it is complained that the court, by the first instruction for defendant, submitted to the jury the question whether the written contract for 1892 amounted to a commission contract, and that such submission was wrong. The same fault, however, is to be found in instructions given at the request of plaintiff in which the right of control over the twine, the right to cancel the contract and take possession of the twine, the right of reshipment, the right to require weekly statements, and other rights under the written contract, were submitted to the jury to be found from the evidence.

The instruction complained of and perhaps some others to which exception is taken may be subject to criticism, but they concerned matters that did not affect the substantial merits of the case. The evidence was so clear and satisfactory that the twine was sold through Southard to Benway & Knutz, that questions relating to the commission contract were of no real importance. The verdict was clearly right and the judgment will be affirmed.